IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gerald and Helen Conrad,

    Plaintiffs,

  vs.                                  Case No. 2:06-cv-953
                                        JUDGE GRAHAM

Winnebago Industries, Inc.,
et al.,

    Defendants.

OPINION AND ORDER

    Plaintiffs Gerald and Helen Conrad bring this action against Defendant Workhorse Custom Chassis, LLC for alleged defects in the chassis components of a motor home they purchased in 2001. Plaintiffs assert claims under the Magnuson-Moss Warranty Act, the Ohio Consumer Sales Practices Act, and the Ohio Lemon Law, as well as a claim for breach of warranty.

    This matter is before the Court on Workhorse's motion for summary judgment. Workhorse argues that the evidence demonstrates that it timely repaired, at no cost to the Conrads, every defect on the motor home for which it was responsible. The Court agrees and thus grants summary judgment in Workhorse's favor.

I.    FACTUAL BACKGROUND

    On August 9, 2001, the Conrads entered into a sales contract to purchase a 2001 Winnebago Adventurer 35U, manufactured by Winnebago Industries, for $95,525. The Conrads, who are Ohio residents, took delivery of the motor home on October 2, 2001. The motor home's chassis was manufactured by Workhorse Custom Chassis,

a Michigan limited liability company.  The Conrads still own and use the motor home.

On the record before the Court is an authenticated log, attached to Mr. Conrad's affidavit, of the problems the Conrads have had with their motor home.  The log is nearly 30 pages in length and includes both Mr. Conrad's typewritten notes and his wife's handwritten entries.  Also on the record are service invoices from the times the motor home has been repaired.  The Conrads began experiencing problems within a week of when they took possession of the motor home.  The number of problems and repairs are numerous and need not be fully detailed here because the overwhelming majority of them do not relate to the chassis manufactured by Workhorse.  The manufacturer of the motor home, Winnebago Industries, and the maker of the transmission, Allison Transmission, Inc., have been voluntarily dismissed from this action.

The Conrads received a limited warranty from Workhorse when they purchased the motor home.  The warranty states in pertinent part:

> BASIC CHASSIS COVERAGE
> New Workhorse Custom Chassis are covered for 3 years or 36,000 miles, whichever comes first.  This covers the complete chassis as delivered to the body manufacturer, including engine, transmission, suspension, axle, etc. Chassis equipped with the Allison LCT1000 5-speed transmission (W series motor home chassis) are covered by a 3 year-Unlimited mileage warranty, all Allison related warranty repairs are administered by Allison and performed by certified Allison repair facilities.  The New Workhorse Limited Warranty covers repairs to correct any defects related to materials or workmanship occurring during the warranty coverage period. Needed repairs will be performed using new or remanufactured parts.

See Doc. #51-3, p. 16. The record shows that the Conrads' motor home has a W series motor home chassis. A recall notice sent to the Conrads by Workhorse referred to their motor home as having a W series chassis. See Doc. #51-4, p. 27. Further, Eric McCann, a Workhorse regional service manager, submitted an affidavit stating that he has twice inspected the Conrads' motor home and it has a W series chassis. See Nov. 10, 2007 Aff. of Eric McCann, ¶4.

In support of its motion for summary judgment, Workhorse has submitted an inspection report prepared on July 13, 2007 by Mr. McCann. The inspection report identifies which of the problems experienced with the motor home can be attributed to Workhorse.[1] The report found five problems that are attributable to Workhorse and occurred within the warranty period of three years or 36,000: (1) a November 6, 2001 problem with the column multifunction switch; (2) an August 15, 2002 problem with the transmission control module (which Mr. McCann explains is a component installed by Workhorse); (3) a July 15, 2003 problem with the column multifunction switch; (4) a July 17, 2003 problem with the throttle actuator control; and (5) an April 21, 2004 problem with the brake calipers (which was the subject of a recall three months later). The motor home had 22,905 miles on it when the April 21, 2004 repair was made. Mr. McCann found no other chassis-related problems that occurred before the end of three years on October 2, 2004.

Plaintiffs submitted dozens of service invoices in response to

---

[1] Defendant submitted an interrogatory requesting Plaintiffs to identify which of the myriad problems with the motor home were in their opinion Workhorse's responsibility. Plaintiffs declined to do so. See Doc. #51-2, pp. 4-5 (response to Interrogatory #2).

Defendant's document requests.  An examination of these invoices shows that for each problem identified by Mr. McCann, a repair was performed at no cost to the Conrads.

Gerald Conrad, in his affidavit, concedes that all five problems identified by Mr. McCann were repaired.  <u>See</u> Oct. 22, 2007 Aff. of Gerald Conrad, ¶¶9-10.  But he believes that problems (2) and (4) are evidence of "an intermittent problem" with the transmission, and he believes the problems "could very well occur again."  <u>Id</u>., ¶10.  Mr. Conrad further states that since this lawsuit was filed, he has had numerous problems with the motor home's electrical system, yet he "understand[s] that these features were manufactured by Winnebago," not Workhorse.  <u>Id</u>., ¶¶16-23.

Mr. McCann's affidavit explains that problems (2) and (4) were not related to each other.  <u>See</u> McCann Aff., ¶¶7-9.  He further states that the recent electrical problems experienced with the motor home are not Workhorse's responsibility.  <u>Id</u>., ¶10.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  <u>See</u> <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir. 1993); <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.</u>, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the

4

case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-53). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

5

plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

**III. DISCUSSION**

    **A.   Magnuson-Moss Warranty Act and Breach of Warranty**

"The Magnuson-Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." Temple v. Fleetwood Enterprises, Inc., 133 Fed.Appx. 254, 268, 2005 WL 1285719, at *13 (6th Cir. 2005) (citing 15 U.S.C. §§ 2301-2312). "Ultimately, the applicability of the Magnuson-Moss Act is directly dependant upon a sustainable claim for breach of warranty. . . . Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act." Id. (citing Labonte v. Ford Motor Co., No. 74855, 1999 WL 809808, at *7 (Ohio Ct. App. Oct. 7, 1999)).

In order to prevail on a claim for breach of warranty and violation of the Magnuson-Moss Act, a plaintiff must prove that: (1) the goods are nonconforming; (2) the seller was given a reasonable opportunity to cure the defects; (3) and the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts. Temple,133 Fed.Appx. at 268 (citing Abele v. Bayliner Marine Corp., 11 F.Supp.2d 955, 961 (N.D. Ohio 1997)).

Workhorse argues that the breach of express warranty claim is barred by Ohio's four-year statute of limitations for such claims.

6

See Ohio Rev. Code § 1302.98(A). The motor home was delivered on October 2, 2001. Plaintiffs filed their complaint on October 3, 2006. The statute provides:

> A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Ohio Rev. Code § 1302.98(B). "Ohio courts have grappled" with the meaning and application of the "future performance" language in the statute. Zaremba v. Marvin Lumber and Cedar Co., 458 F.Supp.2d 545, 550 (N.D. Ohio 2006). Some courts follow the rule that a seller's promise in an express warranty to repair or replace defects for a fixed time period constitutes a warranty for future performance; thus, the cause of action accrues when the buyer discovered or should have discovered the defect, as long as the discovery happened during the warranty period. See Standard Alliance Industries, Inc. v. The Black Clawson Co., 587 F.2d 813, 821 (6th Cir. 1978) (applying Ohio law); Wells v. Visual Security Concepts, Inc., No. 04-CA-118, 2005 WL 1985227, at *3 (Ohio Ct. App. Aug. 16, 2005). Other courts hold that a promise to repair or replace defects for a fixed period is not a warranty for future performance, but is a remedy; thus, the discovery rule does not apply and the cause of action accrues upon tender of delivery. See Zaremba, 458 F.Supp.2d at 551; Allis-Chalmers Credit Corp. v. Herbolt, 17 Ohio App.3d 230, 236-37, 479 N.E.2d 293, 300-01 (Ohio Ct. App. 1984).

Because Plaintiffs' breach of warranty claim fails so clearly on the merits, this Court need not rule on the issue of whether an

7

express promise to repair or replace defects triggers the discovery rule under Ohio Revised Code § 1302.98(B).  But it should be noted that even if the discovery rule were applied in this case, Plaintiffs still failed to timely assert a cause of action for their November 6, 2001 problem with the column multifunction switch and their August 15, 2002 problem with the transmission control module.

As for the merits, the express limited warranty promised that Workhorse would repair or replace defects to the chassis as delivered to the body manufacturer for three years.  The evidence of record establishes that the Conrads experienced five problems with the chassis or chassis-related components during the warranty period and that all five problems were repaired at no cost to them.  Plaintiffs have submitted no evidence to refute that those problems were fixed at no cost, nor have they shown that Workhorse is responsible for any of the other problems that occurred with the motor home during the first three years.  See Temple, 133 Fed.Appx. at 269 ("[T]he record is completely devoid of any evidence that Cummins failed to make any repairs to the engine as guaranteed by the warranty. . . . The record demonstrates that Cummins fulfilled its warranty and paid for all repairs, parts and labor covered by the warranty as needed.").

Instead, Plaintiffs argue that it took Workhorse an unreasonable amount of time and attempts to fix certain problems.  Plaintiffs point out that the column multifunction switch had to be repaired twice (once on November 6, 2001 and once July 15, 2003) and the August 15, 2002 problem with the transmission control module actually took two replacement attempts.  See Doc. #51-4, p.

14 (invoice noting a "replacement of replacement"). However, "the Magnuson-Moss Act contemplates that a seller 'will be given at least two chances to remedy an alleged defect.'" Temple, 133 Fed.Appx. at 268 (quoting Teerling v. Fleetwood Motor Homes, No. 99-5926, 2001 WL 641337, at *5 (N.D. Ill. June 4, 2001)). There is no evidence that the Conrads had a problem with the column multifunction switch or the transmission control module a third time.

In attempting to salvage their breach of warranty claim, Plaintiffs argue that the problems with the transmission control module and the throttle actuator control "could very well occur again." Plaintiffs have not supported their position with any evidence establishing the probability of those problems reoccurring. This argument is entirely speculative and would relate to problems well past the warranty period anyhow.

Plaintiffs lastly argue that their motor home has experienced recent electrical issues. This argument fails for two reasons. First, these problems occurred beyond the three-year warranty period. Second, there is no evidence that these electrical issues are Workhorse's responsibility.

**B. Ohio Consumer Sales Practices Act**

The Ohio Consumer Sales Practices Act prohibits "suppliers" from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). The Act provides non-exhaustive examples of deceptive behavior, including misrepresenting:

> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

9

>    (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
>
>    . . .
>
>    (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, ...;
>
>    . . .
>
>    (7) That replacement or repair is needed, if it is not;
>
>    . . .
>
>    (10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

Ohio Rev. Code § 1345.02(B).

In order to prevail on a claim under the Ohio Consumer Sales Practices Act, a plaintiff must establish that "a material misrepresentation, deceptive act or omission" impacted his decision to purchase the item at issue. Mathias v. Am. Online, Inc., No. 79427, 2002 WL 377159, at *5 (Ohio Ct. App. Feb. 28, 2002) (citing Janos v. Murduck, 109 Ohio App.3d 583, 672 N.E.2d 1021 (Ohio Ct. App. 1996)). As one court put it, "[i]n order to be deceptive, and therefore actionable, a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved." Richards v. Beechmont Volvo, 127 Ohio App.3d 188, 191, 711 N.E.2d 1088, 1090 (Ohio Ct. App. 1998).

Workhorse argues that there is no evidence that it made any misrepresentations on which the Conrads relied in deciding to purchase the motor home. Workhorse cites Temple, wherein the court granted summary judgment on a Ohio Consumer Sales Practices Act

claim to Cummins, the maker of the engine in plaintiffs' motor home, because plaintiffs admitted to not having received or read the Cummins warranty before purchasing the motor home.  Temple,133 Fed.Appx. at 267-68.

Here, the Conrads admitted in an interrogatory that they did not receive the Workhorse warranty before purchasing their motor home.  See Doc. #51-2, p. 8 (response to Interrogatory #17). Further, Plaintiffs have not shown that Workhorse made any other misrepresentations to them in connection with the purchase.  But their claim would still fail even if the Conrads had received the warranty before making their purchase.  Where a claim under the Ohio Consumer Sales Practices Act is based on a representation to repair or replace defects, a plaintiff must prove that the defendant failed to repair a covered defect.  See Boyle v. Daimler Chrysler Corp., No.2001-CA-81, 2002 WL 1881157, at *7 (Ohio Ct. App. Aug. 16, 2002).  The record amply demonstrates that Workhorse repaired all defects covered by the warranty.

### C.  Ohio Lemon Law

The Ohio Lemon Law requires the "manufacturer" of "a new motor vehicle" to "make any repairs as are necessary to conform the vehicle to [its] express warranty" within the first year, or 18,000 miles, whichever comes first.  Ohio Rev. Code § 1345.72(A).  The Law "attaches a clear duty on sellers and gives them the opportunity to preclude recovery by making prompt repairs." Royster v. Toyota Motor Sales, U.S.A., Inc., 92 Ohio St.3d 327, 329, 750 N.E.2d 531, 533 (2001).  If a manufacturer cannot repair a new vehicle after "a reasonable number of repair attempts," a buyer may request a refund or a replacement.  Ohio Rev. Code §

1345.72(B); Royster, 92 Ohio St.3d at 329, 750 N.E.2d at 534.

The Lemon Law sets forth a "presumption of a reasonable number of attempts to repair":

> It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:
>
>    (A) Substantially the same nonconformity has been **subject to repair three or more times** and either continues to exist or recurs;
>
>    (B) The **vehicle is out of service** by reason of repair **for a cumulative total of thirty or more calendar days**;
>
>    (C) There have been eight or more attempts to repair any nonconformity;
>
>    (D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs.

Ohio Rev. Code § 1345.73 (emphasis added).  These presumptions establish "a definition of reasonableness that a consumer must meet to survive summary judgment."  Temple,133 Fed.Appx. at 262.

Workhorse correctly offers two reasons why it is entitled to summary judgment on Plaintiffs' Lemon Law claim.  First, Workhorse repaired, in two attempts or less, the two chassis-related problems which arose during the one year period following delivery.  The invoices and the Conrads' log show that these problems caused the motor home to be out of service for no more than seven or eight total days.

12

Second, Workhorse is not a "manufacturer" under the Lemon Law, which defines a "manufacturer" as a "person who manufactures, assembles, or imports motor vehicles, including motor homes." Ohio Rev. Code § 1345.71(B) (incorporating the definition in Ohio Rev. Code § 4517.01(R)). Courts have held that the Ohio Lemon Law creates liability for a "single entity, namely the final manufacturer of a finished motor home." Temple,133 Fed.Appx. at 264-65 (internal quotations omitted) (citing Rothermel v. Safari Motor Coaches, Inc., No. 93-7229, 1994 WL 1029332, at *3-*4 (N.D. Ohio July 29, 1994)). In Temple, the court held that "Cummins, the manufacturer of the *engine*, does not fit into any of [the statute's] descriptions." Id. at 264 (emphasis in original). Similarly, the court in Rothermel held that the maker of a motor home's chassis was not liable under the Lemon Law:

> The statute provides replacement of the vehicle or refund of the purchase price as optional remedies for a nonconforming vehicle. Oshkosh, the chassis manufacturer, does not receive the purchase price for its product, and once the product is sold to Safari, has no ownership interest in it. . . . Oshkosh therefore cannot share Safari's burden or benefit in returning the consumer to its presale condition. Of course, Safari has recourse against Oshkosh and other component part manufacturers for providing defective products.
>
> . . . [A] rule imposing on the consumer the unreasonable burden of bringing breach of warranty actions against each component parts manufacturer in order to obtain a refund of the price paid would contravene not only the language of the statute, but also its policy of consumer protection.

Rothermel, 1994 WL 1029332, at *3. Here, Winnebago Industries and not Workhorse was the manufacturer of the Conrads' motor home.

13

**IV. CONCLUSION**

For the reasons stated above, Defendant Workhorse Custom Chassis LLC's September 28, 2007 motion for summary judgment (doc. 47) is GRANTED.

<pre>
                                s/ James L. Graham
                                JAMES L. GRAHAM
                                United States District Judge
</pre>

DATE: April 9, 2008